**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | )   **No. 20 CR 590** |
| **vs.** | ) |
| | )   **Hon. Harry D. Leinenweber** |
| **ANTONIO MCCLELLAN,** | )      **Presiding Judge** |
| | ) |
| **Defendant.** | ) |

## DEFENDANT'S SENTENCING POSITION PAPER

Now comes the defendant, Antonio McClellan, by and through his undersigned attorney, and respectfully requests that this Honorable Court, in light of *Gall v. United States*, 552 U.S. 38 (2007) and the factors set forth in 18 U.S.C. § 3553(a), sentence him to the most lenient sentence permissible under the law; one that is sufficient, but not greater than necessary, to comply with the purposes of sentencing. In support, the following is offered:

### INTRODUCTION

If there was ever an upbringing that directly correlated to the offense of conviction, this is it. When looking at what Mr. McClellan has had to endure during the course of his entire life, it is no surprise where he has ended up. He has made mistakes and for this, he has and is accepting his responsibility. There are, however, mitigating circumstances surrounding his upbringing and debilitating struggle with mental health illnesses. Sure, he is not the first person to come before this Court that experienced hardships growing up, but they must still be considered within the framework of Section 3553(a). And while these mitigating circumstances sure will not

excuse the behavior, they will shed light on what Mr. McClellan has had to endure both before and since being arrested. Mr. McClellan's life has lately, more so than ever, has been consumed with anxiety, stress, and anguish as he has waited for his time before this Honorable Court for judgment.

By the time Mr. McClellan comes before this Honorable Court for sentencing, he will have spent more than twenty-seven months locked up both within the confines of Cook County Jail, Illinois Department of Corrections, and Winnebago County Jail. He has spent much of this time reflecting on the decision he has made leading up to his incarceration and the lack of necessity of any of his actions. While much of the mistakes made by Mr. McClellan's are directly attributable to his unfortunate upbringing, he has now come to an age where he appreciates the repercussions of his actions.

There is no denying the seriousness of Mr. McClellan's transgressions, and he does not intend on doing so – he was clearly wrong. Instead, he offers himself to the mercy of this Court, to take into consideration not only those actions that brought him before this Court, but the nature and circumstances of the instant offense, and his personal history and characteristics. Mr. McClellan respectfully asks this Honorable Court to sentence him to the most lenient sentence permissible under the law; one that is sufficient, but not greater than necessary, to comply with the purposes of sentencing.

**<u>Sentencing Considerations Pursuant to 18 U.S.C. § 3553(a) Supporting a<br>Below-Guidelines Sentence</u>**

This Court maintains unfettered discretion to fashion a sentence that punishes the offender, as opposed to the crime itself. *Pepper v. United States*, 131 S.Ct. 1229, 1240 (2011); *United States v. Ramirez-Mendoza*, 683 F.3d 771, 777 (7th Cir. 2012). After first calculating the applicable sentencing range, district courts are then tasked with imposing a sentence that is reasonable under 18 U.S.C. § 3553(a). However, because sentencing guideline ranges are not to be presumed reasonable, this Court must consider whether they actually conform to the circumstances of the case. *Nelson v. United States*, 555 U.S. 350 (2009) (*per curiam*); *United States v. Dean*, 414 F.3d 725, 730-31 (7th Cir. 2005). So long as the selected sentence is "rooted in § 3553(a), sufficiently individualized to the circumstances of [the] case, and generally associated with sentencing leniency[,]" a below-guidelines sentence is appropriate. *United States v. Wachowiak*, 496 F.3d 744, 745 (7th Cir. 2007).

In fashioning his sentence, one that is sufficient but not greater than necessary, Mr. McClellan respectfully asks this Court to consider his upbringing and mental health illnesses, among the other § 3553(a) considerations that are outlined below.

### a. Advisory Guideline Range

A sentencing court's inquiry begins by calculating the defendant's advisory Guideline range. *United States v. Schroeder*, 536 F.3d 746, 755 (7th Cir. 2008). In this case there are no disputes regarding the guideline calculations. The total offense

level is 21.  Coupling with a criminal history category of VI, Mr. McClellan's advisory sentencing range is 77 to 96 months' imprisonment.

However, not all sentences within the guideline range are reasonable.  *See United States v. Cunningham*, 429 F.3d 673, 676 (7th Cir. 2005) ("[T]he sentencing judge may not rest on the guidelines alone, but must, if asked by either party, consider whether the guidelines sentence actually conforms, in the circumstances, to the statutory factors . . . He cannot treat all sentences that would fall within the guidelines sentencing range as reasonable per se.").  To that end, the defendant is free to recommend any sentence deemed fair and appropriate.  *Id.*  As one district court judge has put it, the Guidelines' "most fundamental flaw is the notion that the complexity of human character and conduct can be rationally reduced to some arithmetic formula."[1]  In light of his individual history and characteristics, the nature and circumstances of the offense, and other relevant considerations, Mr. McClellan respectfully requests this Honorable Court to exercise its discretion, in accordance with the § 3553(a) factors and *Gall*, and sentence him as leniently as is permissible under the law.

### b.  MCCLELLAN'S PERSONAL HISTORY AND CHARACTERISTICS

The roots of Mr. McClellan's problems, both personal and legal, can be directly traced back to his childhood.  While many defendants that come before this Court certainly has less-than-ideal upbringings, each must be given an individualized assessment when facing judgment by this Court.  Mr. McClellan was born to the non-

---

[1] Terry Carter, *Rakoff's stance on the SEC draws fire, praise – and change: The Judge Who Said No*, ABA Journal, Oct. 2013, at 53.

marital union of Michael Liggins and Maria Williams. But he grew up thinking that Phillip McClellan was his father. He did not meet his biological father until he was about twenty-three (23) years old. His assumed father abandoned him when he was a young teenager, and his biological father, who was never a part of his life, has passed away for reasons unknown to Mr. McClellan. *See United States v. Germosen*, 473 F. Supp. 2d 221 (D. Mass 2007) (where guideline range was 37-46 months for conspiracy to distribute heroin, a sentence of two years' probation with six months home confinement was warranted partly because defendant had overcome difficult circumstances of his youth where he the defendant was separated from his father and raised by his mother until she moved to Puerto Rico, leaving the defendant behind to be raised by other family members, was physically abused in his home, and was the frequent target of physical abuse in his neighborhood).

*Booker*, and its progeny, have made it clear that sentencing courts are free to consider "lack of guidance as a youth" and "circumstances indicating a disadvantaged upbringing" in considering what sentence to impose. 543 U.S. 220. Even pre-*Booker*, an individual's upbringing needs only be a contributing factor to a defendant's criminal behavior to warrant a downward variance – a direct link between the two is unnecessary. *United States v. Ayers*, 971 F. Supp. 1197 (N.D. Ill. 1997) (defendant suffered extreme physical and sexual abuse as well as psychological and emotional torture inflicted by his father, the court found that while the abuse was not a direct cause of the defendant's criminal behavior, it was a contributing factor which warranted a downward variance). Although *Booker* has rendered the concept of

5

departures obsolete, sentencing courts can look to the advisory departure guidelines as a way to analogize § 3553(a) factors. *United States v. Miranda*, 505 F.3d 785, 791, 792 (7th Cir. 2007).

Mr. McClellan was raised by his mother and grandmother on the west side of Chicago, near the Lawndale neighborhood that was high in crime, drug trafficking, violence, and gang activity. Mr. McClellan witnessed violence on a regular basis. When he was ten (10) years old, he saw someone shot and killed. Two of his best friends were killed right in front of him as well: Maurice and Martel. *See infra*.

His family struggled financially his entire life and were supported by government assistance. They often lacked the basic life necessities such as food, clothes, and proper shoes. This led Mr. McClellan to drop out of high school after his freshman year. As he recalls, he did not have a lot of things and saw his mother struggling. He learned to make his own money by selling marijuana and from there, his life went down the spiral he finds himself in now. He found himself gravitating towards the wrong people and making poor life decisions because of the desire for instant gratification. The drug dealing led him to being arrested and becoming a regular fixture in the juvenile justice system where his underlying mental health illnesses were not address. *See infra*.

From there on out, Mr. McClellan kept finding himself in situations he had no business being in but felt bootstrapped to because he felt like he had no other options. *United States v. Handy*, 2008 WL 3049899 (E.D.N.Y. 2008) (court imposed 30 month sentence rather than guideline range 37-46 months for 20 year old whose life story

6

read like it came from "the feeder systems into the Cradle to Prison Pipeline"; abandoned as a child, separated from siblings, raised by aunt in high crime area, shot on the street at age 12, left school and took up crime at age 14, spend the majority of his adolescent in prison, prosecuted for possessing a gun he found and believed to be inoperable in an environment where finding a gun on the street is like finding cash); *United States v. Hunt*, 2007 WL 517494 (E.D. Va. Feb 9, 2007) (imposing 24-month sentencing because guideline range of 46-57 months for identity theft was greater than necessary given defendant's history and characteristics and considering other §3553(a) factors. Defendant was thirty years old and was victim of violence as child and teenager. The defendant was a victim before she victimized anyone else and those who victimized her were never punished. The court found that the seriousness of the offense paled in comparison to the seriousness of what happened to the defendant. "Few persons have had a more difficult childhood than Defendant.").

Despite the struggles Mr. McClellan has faced growing up and the mistakes he has made, he is still a valuable member of his family. He is a "good person and a loving son willing to go out of the way for anyone[.]"[2] Mr. McClellan is a "caring person" who "helps out with his family when he [can.]"[3]

Mr. McClellan deeply regrets many of the decisions and mistakes he has made in his life. And now he finds himself copying with a situation that is never easy, especially with the uncertainty of his future looming before him. Under his thick-skinned exterior, Mr. McClellan keeps feelings of disappointed, anger, anxiety, and

---

[2] Maria Williams letters.
[3] Latavia McClellan letter.

many others, cooped up inside, with not many in this world to truly share his feelings with. Behind the criminal allegations and mistakes, he has made throughout his life, Mr. McClellan is a truly a "beautiful person"[4] who can be a productive member of society if given the necessary tools and resources this Court is capable of doing through the conditions of supervised release.

### c. MCCLELLAN'S MENTAL ILLNESSES WARRANT A DOWNWARD VARIANCE

Mr. McClellan suffers from a long string of mental health illnesses that severely impact his ability to analyze, comprehend, and function on daily society. They include depression, attention-deficit hyperactivity disorder (ADHD), unspecified disruptive, impulsive control, and conduct disorder, post-traumatic stress disorder (PTSD), and adjustment disorder. PSR, ¶ 73. While each of these disorders, individually, makes a person's life more difficult, together their cumulative effects are that much worse and more debilitating.

Most concerning, however, is Mr. McClellan's schizophrenia. The initial symptoms began shortly after his best friend, Maurice, was killed in front of him in 2015. Mr. McClellan started having flashback and nightmares of Maurice coming back to talk to him. He would also see him when he was awake. This continued into 2017, when Mr. McClellan became hearing and seeing things randomly such as shadows and ghosts. PSR, ¶ 76. He would also hear things such as "hurt this person" or "why did you not help me". *Id.* Things escalated even more after Mr. McClellan's

---

[4] Maria Williams letter.

friend Martel was shot in the head in front of him. Martel would start coming to him and talking to him as well.

These mental health struggles have led Mr. McClellan to contemplate suicide on multiple occasions, including taking too many pills and wrapping a sheet around his neck with a plan to jump from the top bunk. Although these occurred while Mr. McClellan was in custody, his family told the mitigation expert this Court approved to work with Mr. McClellan that his had occurred on prior occasions, when he was a teenager, and was upset with his constant run-ins with law enforcement.

In sentencing Mr. McClellan this Court may consider his mental conditions and need for certain medical care when determining the sentence, it believes to be appropriate. 18 U.S.C. § 3553(a)(2)(D) (mandating consideration of "the need for the sentence imposed. . . to provide the defendant with . . .medical care, or other correctional treatment in the most effective manner"); *see United States v. Powell*, 576 F.3d 482, 499 (7th Cir. 2009) (instructing sentencing court to consider defendant's arguments about his physical infirmities and advanced age). The guidelines provide a policy statement, § 5H1.3, that provides that "[m]ental and emotional conditions may be relevant in determining whether a departure is warranted, if the condition or appearance, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines." In certain cases, "a downward departure may be appropriate to accommodate a specific treatment purpose." *Id.*

While whatever diminished capacity or depression Mr. McClellan exhibits, it is neither a defense to the alleged crime or an excuse for commit it. Instead, without giving rise to a legal defense or a formal departure, it does focus the lens through with this Court should assess certain factors in § 3553(a). Aside from Mr. McClellan's "personal history and characteristics", it should also be view within the framework of "just punishment for the offense" under § 3553(a)(2)(A) requires considering Mr. McClellan's mental state as a mitigation factor. *See, e.g. United States v. Roach*, 00 CR 411 (Memorandum Opinion and Order, August 22, 2005). As the Seventh Circuit suggested in *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005), "'just punishment' also includes the concept of retribution – which, considered fairly, requires an assessment of the relative culpability of the offender – and may also include the concept of deterrence and rehabilitation, both of which may depend in part on the offender's personal characteristics." *Id.*, pg. 6.

Surely, Mr. McClellan should be viewed differently, in justice and fairness, then an individual who committed an equally serious offense without the underlying mental health issues. It would certainly benefit Mr. McClellan for this Court to see to it, there be a mental treatment mandated as part of a term of supervised release, with any necessary treatment. He has already been in therapy during prior terms of incarceration, but it has thus far not been successful and none were mandated while he was on parole. This should certain be required by this Court in this case. The record in this case gives rise to compelling inferences that if Mr. McClellan does not have appropriate and continuing therapy, his mental state may continue preventing

him was critically analyzing life's various obstacles and has contributed to recurrence in his previously worsening of behavior.

### d. DETERRENCE, JUST PUNISHMENT, AND OTHER POLICY CONSIDERATIONS

This Court is inherently tasked with an incredibly difficult decision as to what a just punishment is for any given defendant. CHIEF JUSTICE JOHN G. ROBERTS JR., 2016 YEAR-END REPORT ON THE FEDERAL JUDICIARY 5 (2016) ("Most district judges agree that sentencing is their most difficult duty. In delivering the sentence, the judge speaks as the voice of the community."). While the sentencing guidelines work as a benchmark in sentencing, on their face, they fail to accurately illustrate the reality of the crime of conviction. The guidelines in this matter carry an advisory sentencing range of 77 to 96 months' imprisonment. A guidelines sentence, here, will severely overstate the seriousness of this case and provide a sentence that is not only harsh but much greater than necessary. And while Mr. McClellan makes no effort to deprecate the seriousness of the offense and understands the need for retribution, an appropriate sentence in this case should vary downwards from the advisory guidelines.

The goal of sentencing is to impose a sentence that is sufficient, but not greater than necessary to comply with the purposes set forth in § 3553(a)(2). Through this "parsimony provision," the Court is to impose a sentence that is the *minimum* necessary to accomplish those goals set for in paragraph (2). See, e.g., National Research Council of the National Academies, The Growth of Incarceration in the United States, Exploring Causes and Consequences, 8 (2014) ("Parsimony: the period

11

of confinement should be sufficient but not greater than necessary to achieve the goals of sentencing policy.").

Mr. McClellan will undoubtedly be sentenced to a term of imprisonment. But in determining a just punishment, the main issue is the length of incarceration. And while the sentencing must reflect the seriousness of the offense in an effort to deter others from committing similar offenses, Mr. McClellan's sentence should not be one that is merely used as an example for others. The fact is that people have and will continue to commit crimes. Thus, while general deterrence is important, it should only be a small consideration in this Court's sentencing considerations. Instead, this Court should focus on how Mr. McClellan can be put into a position to succeed once he is release, to become a contributing member to society, through mandatory vocational training, mental health treatment, and substance abuse treatment while on supervised release.

For the same reasons a long and severe sentencing will not achieve general deterrence of future gun crimes in the community, specific deterrence will not be achieved. As with general deterrence, the key to specific deterrence is the "known risk of detection and punishment, not the length of the sentence." *United States v. Lawrence*, 16 CR 243 (E.D.N.Y., June 6, 2017). The fact that Mr. McClellan was apprehended and has already spent a significant amount of time in custody, away from any negative outside influences has already had deterrent effects and have provided as much as would be achieved with a within-guideline sentence.

12

Although much of Mr. McClellan's time in custody was plagued by the unprecedented COVID-19 pandemic, shutting down in-custody programs usually available to inmates, he has attempted to make the most his time by completing various programs once they began being offered again. These include "Re-Entry Success: Bottom-Line Reasons to Hire the Formerly Incarcerated", "Beyond Prison, Probation and Parole", and "Re-Entry Success: Communication: What's the Point." *See attached.* While surely this Court will consider Mr. McClellan's conduct prior to arrest in fashioning a reasonable sentencing, there is also a need to consider "the most up-to-date picture" of the defendant's history and characteristics, "sheds light on the likelihood that [the defendant] will engage in future criminal conduct." *Pepper,* 562 U.S. at 492.

According to § 3553(a)(2), an appropriate sentence should "afford adequate deterrence to criminal conduct" and "protect the public from further crimes of the defendant." Granted a sentence must reflect the seriousness of the offense and provide for adequate deterrence, the effect on Mr. McClellan resulting from his conviction and term of incarceration have already, and will continue to, ensure that the purposes of sentencing, deterrence, and respect for the law will still be fully vindicated if this Honorable Court imposes a significantly below-guideline sentence. Such a sentence would not deprecate the seriousness of the offense and would provide adequate specific and general deterrence. *See Gall*, 552 U.S. at 54.

In imposing a sentence, district courts are generally allowed to consider the conditions of a defendant's pretrial confinement under § 3553(a). *United States v.*

*Pressley*, 345 F.3d 1205 (11th Cir. 2003); *United States v. Carty*, 264 F.3d 191, 196 (2d Cir. 2001) (per curium); *United States v. Rorrer*, 161 F. App'x 518, 522 (6th Cir. 2005) (unpublished); *See also United States v. Dyck*, 334 F.3d 736, 742-43 (8th Cir. 2003). While it may be somewhat uncomfortable to think of it this way, but the purpose of punishment is to impose suffering upon a prisoner (not cruel and unusual suffering, but some suffering nonetheless). For that reason, how harsh the conditions of confinement are is relevant to the questions of (1) whether retribution has been satisfied and (2) whether the punishment is sufficient to effect specific deterrence.

The instant pandemic required that prisoners be held under much stricter conditions than those to which they are normally subject. The degree of freedom of movement that was allowed prior to the pandemic in facilities has been severely limited. Prisoners have more limited access to communal areas and recreation. That may have been necessary to try to protect the inmate population and staff, but it imposes an additional and very real hardship upon prisoners beyond what they are normally required to endure. That increased the harshness of Mr. McClellan's pretrial confinement is beyond what typical detainees face as they await judgement before courts. While those facts, by themselves, do not necessarily justify a downward variance from the guidelines but they are certainly relevant considerations.

Mr. McClellan makes no effort to deprecate the seriousness of this offense and understands the need for retribution. Nonetheless, any sentence of imprisonment within the anticipatory guideline range would go beyond what is necessary to accomplish the purposes of sentencing. He is not an evil-minded or violent offender.

14

Here, there is no doubt that a term of imprisonment is expected. And although the seriousness offense is not in question, the totality of the crime when juxtaposed against the considerations outlines above weight in favor of compassion and leniency. To that end, Mr. McClellan respectfully requests a sentence that is significantly lower than what the government is requesting, one that is sufficient but not greater than necessary to achieve the goals of sentencing.

<u>CONCLUSION</u>

This Court holds significant discretion to not only craft a reasonable, appropriate sentencing pursuant to the guidelines, but to consider the totality of circumstances surrounding the individual involved, including, among other factors, Mr. McClellan's unfortunate upbringing and his serious mental health illnesses. Without that, he has surely made some poor choices. But Mr. McClellan is truly a person than can and will benefit from vocational, mental health, and substance abuse services that would health change the trajectory of his life and make him a productive member of society. These are programs that he has not had access to in the past but are within this Court's purview as it contemplates the conditions of his supervised release. In sentencing Mr. McClellan to the most lenient, below-guideline term of imprisonment available under the law, along with the aforesaid supervised release considerations, this Court would accomplish the goals of sentencing by punishing the individual, not the crime, to a sentence that is sufficient, but not greater than necessary. *See Pepper*, 131 S.Ct. at 1240.

15

Respectfully submitted,


*/s Vadim A.Glozman*
*Attorney For Antonio McClellan*


Vadim A. Glozman
LAW OFFICES OF VADIM A. GLOZMAN
53 W. Jackson Blvd., Suite 1128
Chicago, IL 60604
(312) 726-9015
vg@glozmanlaw.com

16

## CERTIFICATE OF SERVICE

I, Vadim A. Glozman, an attorney for Defendant Antonio McClellan, hereby certify that on this, the 25th day of November, 2022, I filed the above-described document on the CM-ECF system of the United States District Court for the Northern District of Illinois, which constitutes service of the same.

Respectfully submitted,

*/s/ Vadim A. Glozman____*

LAW OFFICES OF VADIM A. GLOZMAN
53 W. Jackson Blvd., Suite 1128
Chicago, Illinois 60604
(312) 726-9015